### IN BURKE SUPERIOR COURT, DECEMBER, 1832.

### JOSEPH CUMMING *vs.* JOHN FRYER.

#### *Fi. Fa. and Claim.*

Where there
have been two
concurring ver-
dicts, unless
there be some-
thing grossly
and manifestly
wrong and un-
just in them,
they should not

THIS writ, with others, was levied upon a number of negroes which were claimed by the administrators of Elijah Walker, and by the jury found subject to the judgments.

A new trial is moved for by the claimants on several grounds, which have been considered, and will be noticed in their order.

It may be proper here to remark that there have in this

case, been two concurring verdicts, and unless there be something grossly and manifestly wrong and unjust in them, they should not be disturbed by the court.

The first ground is, "that the verdict is against law and fact;" and contains a defence of the benevolence and gratitude of the claimant's intestate; amiable traits of character, which were not denied to have been possessed by him; though it was contended that he should not be allowed to indulge his benevolent and grateful feelings at the expense of John Fryer's creditors.

The facts of the case are in substance, that at the time of the transactions which gave rise to the present litigation, John Fryer was insolvent, and desired to have his property so disposed of that something might be saved for his family, and that the intestate was willing to assist him in his design. That in pursuance of this common intention the intestate assumed, to a certain extent, an agency in selling John Fryer's property, contracting it privately at a fair price, and then having it sold at sheriff's sale, and applying a part of the proceeds of the private sale to Fryer's creditors and holding the balance to be applied to the use of his family, and that on one occasion he received from Fryer money to purchase one of Fryer's negroes about to be sold by the sheriff, which money, however, he returned when the matter began to be publicly talked about. That when all Fryer's property had been disposed of either at public or private sale, except seven negroes, the intestate took from Fryer a bill of sale for them, the consideration of which was his undertaking to pay certain of Fryer's creditors; that this sale was made shortly before the court was to sit, at which judgments were to be rendered against Fryer; and that the negroes thus sold, remained on Fryer's plantation for some months after the sale, and were then removed by the intestate to his own plantation. These negroes and some of those purchased at sheriff's sale, are the subjects of this claim.

It was for the jury, under the charge of the court, to draw the inference whether or not " the transaction was perfectly fair and just." This they have done against the fairness of the transaction.

But it is said as the second ground that " The court erred in charging the jury that Elijah Walker might be considered a trustee for favored creditors under the act of 1818, since the facts of the case showed that Elijah Walker purchased *bona fide* and for himself."

The facts showed that he paid no money for the seven negroes contained in the deed from Fryer to him, at the time of its execution, but that the consideration of the sale was Elijah Walker's promise to pay Fryer's note due to the creditors, who from that time looked to Walker for payment, and according to the testimony of one of them, actually received

*be disturbed by the court.*

*Statutes against fraud when they operate upon the offence are to be liberally construed so as to avoid the fraudulent transaction.*

*Returns which have been allowed by the court of ordinary are prima facie evidence for administrators when called to account for their administration; but never evidence of title for them against third persons.*

*If on trial of a claim the jury be satisfied that the claimant purchased the property with the money of the defendant in fi. fa., they ought to declare the sale void against creditors even though it should have been made by a sheriff in market overt.*

BURKE,
December, 1832.

CUMMING
*v.*
FRYER.

payment from him. The charge of the court to the jury was that if they found the negroes to have been conveyed from Fryer to Walker in trust for the payment of certain creditors, to the exclusion of other creditors from an equal share or portion thereof, though such trust may have been secret, and not expressed on the face of the deed, it would render the deed void under the act above referred to : Or if they found the notes of Fryer, then in Walker's hands, and to be paid for with the negroes, were Walker's, yet if there was a secret trust, that the negroes were to be held for the family of Fryer, and either had been, or were to be paid for by the proceeds of Fryer's property, raised by means of the transactions testified to, the deed from Fryer to Walker was void, under the statute.

Nothing has been shown to raise a doubt of the correctness of the instruction given to the jury. It is in strict accordance with the rule that statutes against fraud, when they operate upon the offence are to be liberally construed so as to avoid the fraudulent transaction. 1 Blk. Com. 88. Had such trust been expressed on the face of the deed, there could have been no doubt as to the voidness it would have created under the operation of the act.

The third ground assumed to sustain the motion is "That the court erred in allowing transactions not pertaining to the issue to be given in evidence."

At the trial it was objected that no evidence but what related immediately to the sale of the negroes levied on was proper, as the validity of each particular sale must depend upon its own circumstances. This objection was overruled, and the court still think, properly overruled.

The proximity of these transactions in point of time, and the result intended to be brought about (and actually brought about according to the declaration of the intestate himself) of saving some of the negroes for Mrs. Fryer, show that each sale was part of the general design, and that a knowledge of the whole was essentially necessary to a right understanding of each particular part of the transactions between Fryer and Walker.

In the sixth ground it is stated that "The claimants had no chance of showing the true nature of these transactions—they having been prepared to do so only in relation to the property levied on, and their accounts with the Court of Ordinary having been rejected by the court.

The claimants cannot complain of surprise. This was a second trial. Their title had, on the first trial, been attacked and set aside as fraudulent; and they should have been prepared to show its fairness. But they say their means of showing it was rejected by the court. The court could not have done otherwise, than reject, as clearly illegal, the testimony offered. It was the accounts of the claimants made by them-

selves and offered in support of their own title. Such accounts, which have been allowed by the court of ordinary are *prima facie* evidence for administrators when called to account for their administration, but never evidence of title for them against third persons.

The fourth ground is that "The jury actually did set aside sales made by the sheriff in open market, and which were untainted by any fraud or covin whatever." It is certainly true that the jury did set aside sheriff's sales, but that they were untainted with fraud or covin, this court is not prepared to say.

The jury were instructed, that if Walker purchased those negroes held under sheriff's title, in good faith, with his own money, they could not be again subjected to the payment of Fryer's debts, whatever may have been his intention as to the ultimate disposal of them.

But that if they were purchased with money received by him from Fryer for that purpose; or with money received from the sale of Fryer's property in pursuance of the design to cover a part for Mrs. Fryer's benefit, the sale, though made by a sheriff, would not protect them from liability to executions against John Fryer.

Under these instructions, and upon the evidence before them, the jury have found against the claimants, and the court cannot undertake to say that finding was incorrect.

Upon the whole case, after an attentive consideration of it, the court, finding nothing to render it dissatisfied with the verdict, and believing it to be in accordance with and not "contrary to law, equity and justice," overrules the motion.

A new trial is refused.